UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ANGIE MURPHY COLLIER | CIVIL ACTION NO. |
| VERSUS | 13-CV-425-SDD-SCR |
| JOHN ROBERTS, SID J. GAUTREAUX, III, AND XYZ INSURANCE CO. | |

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] by Defendants Sid Gautreaux ("Geautreax"), Sheriff of East Baton Rouge Parish, in his official capacity, and John Roberts, individually and in his official capacity as a Deputy Sheriff for the East Baton Rouge Parish Sheriff's Office ("EBRPSO"). Plaintiff, Angie Murphy Collier ("Plaintiff") has filed an *Opposition*[2] to which the Defendants filed a *Reply*.[3] For the reasons which follow, the Court finds that the motion should be granted in part and denied in part.

I.  **FACTUAL BACKGROUND**

Plaintiff claims that, on March 13, 2013, Deputy John Roberts responded to her residence based on an inaccurate report of felony theft . The alleged theft involved a small jar of gel powder used for manicures which Plaintiff contends is worth less than $40. Deputy Roberts, adorned in his EBRPSO uniform, knocked on Plaintiff's door and, after she answered, immediately demanded that she recount her version of events

---

[1] Rec. Doc. No. 7.
[2] Rec. Doc. No. 9.
[3] Rec. Doc. No. 11.

1

relating to the theft of gel powder. Plaintiff further contends that, after she began speaking, Deputy Roberts interrupted her and demanded identification. Plaintiff retrieved her wallet and provided her identification. Plaintiff claims that Deputy Roberts instructed her to put her wallet back inside. Plaintiff asked if she could instead place the wallet in her mailbox which was closer to her front door. Plaintiff claims that, in response, Deputy Roberts "suddenly, and without provocation," began cursing at Plaintiff, physically seized her by the neck and forced her to the ground.[4] Plaintiff further claims that, while she was handcuffed on the ground, Deputy Roberts deployed his TASER gun on her at least twice. Plaintiff claims she begged Deputy Roberts to stop; yet, with the TASER prongs still attached to her skin, Deputy Roberts forced Plaintiff into his police car and threatened her with additional TASER pulses.

Plaintiff contends that, as she sat handcuffed in the back of Deputy Roberts' police car, he paced back and forth in her front lawn while talking on his cellphone. Thereafter, Deputy Roberts opened the door to the police car and allegedly read Plaintiff her *Miranda* rights for the first time without advising her with what she was charged. At this time, Plaintiff alleges Deputy Roberts asked her to again recount the events surrounding the gel powder. Plaintiff did not respond to this request. Plaintiff claims Deputy Roberts sat in the police car and verbally berated her until other law enforcement arrived at the scene.

Plaintiff filed this lawsuit against Deputy Roberts and Sheriff Gautreaux, alleging that Deputy Roberts' actions constituted excessive force which deprived Plaintiff of her Fourth and Fourteenth Amendment rights under the United States Constitution. Plaintiff also alleges several state law claims against the Defendants, including excessive force,

---

[4] *See* Rec. Doc. No. 9, p. 2.

battery, assault, false imprisonment, and intentional infliction of emotional distress. Plaintiff claims that Sheriff Gautreaux is liable for failure to properly train and/or supervise Deputy Roberts, and that Sheriff Gautreaux is vicariously liable for the acts of Deputy Roberts.

The Defendants move to dismiss the official capacity claims against them, claiming that Plaintiff has failed to allege any unconstitutional policy or custom that caused her injury. Additionally, Defendant contend Plaintiff has failed to show how the EBRPSO's training program was defective, or how Deputy Roberts is a policy maker with the EBRPSO such that he may be sued in his official capacity.

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[5] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[6] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[7] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

[5] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[6] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[7] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

3

recitation of the elements of a cause of action will not do."[8] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[9] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[11] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[12] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[13]

### B. Official Capacity Claims Against Deputy Roberts

In this case, Plaintiff has sued Deputy Roberts in his individual and official capacities. However, Defendants are correct that Plaintiff has failed to allege that Deputy Roberts was a final decision-maker or policy maker for the EBRPSO. As such, the official capacity claims against Deputy Roberts must be dismissed.[14] "[S]uits against police officers in their official capacity are basically suits against the municipality."[15] Because Plaintiff's suit against the Sheriff is a suit against the municipality, she cannot also sue Deputy Roberts in his official capacity as an employee

---

[8] *Twombly*, 550 U.S. at 555(internal citations and brackets omitted)(hereinafter *Twombly*).
[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[10] *Twombly*, 550 U.S. at 570.
[11] *Iqbal*, 556 U.S. at 678.
[12] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[13] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[14] *See Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898 (E.D. La. 2001)(citing *Turner v. Houma Municipal Fire and Police Civil Service Board*, 229 F.3d 478 (5th Cir. 2000)).
[15] *Daniel v. Compass*, 212 F. App'x 262, 265 (5th Cir. 2006); *see also Brumfield v. Hollins*, 551 F.3d 322, 331 n. 9 (5th Cir. 2008).

of the municipality. "Suing a party in his official capacity under Section 1983 is duplicative of an action against the municipality which the official serves as an agent."[16] Accordingly, the *Motion to Dismiss* Plaintiff's claims against Deputy Roberts in his official capacity is GRANTED.

### C. Official Capacity Claims against Sheriff Gautreaux

As stated above, the suit against Sheriff Gautreaux is essentially a suit against the municipality. A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[17] Therefore, to determine whether the Plaintiff has stated such a claim, the Court must conduct a municipal liability analysis under *Monell v. Dep't of Social Services of the City of New York*.[18]

To assert a claim of municipal liability under Section 1983, a plaintiff must adduce sufficient factual matter to satisfy three elements: (1) the existence of an official policy or custom; (2) a policymaker with final policymaking authority; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.[19] Municipal liability cannot be established by a theory of *respondeat superior*.[20] Rather, the Plaintiff must point to some official policy or custom that caused her constitutional harm.[21] The Fifth Circuit Court of Appeals has unanimously defined an official policy for Section 1983 purposes as:

---

[16] *Terry v. City of New Orleans*, 523 F.Supp.2d 486, 492 (E.D. La. 2007).
[17] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir.1999).
[18] 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); See *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 501 (W.D.La. 2001) (citing *Turner v. Houma Mun. Fire and Police Civil Service Bd.*, 229 F.3d 478, 483 fn. 10 (5th Cir. 2000)).
[19] *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 227 (5th Cir. 2009).
[20] *Monell*, 436 U.S. at 691.
[21] *Id.*

5

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[22]

In her *Complaint*, Plaintiff alleges that:

> Upon information and belief, ... Sheriff Sid J. Gautreaux, III, failed to adequately supervise and/or train defendant Roberts. A causal connection exists between Sheriff Gautreaux's failure to adequately train and supervise defendant Roberts and the violation of Ms. Collier's constitutional rights. Further, Sheriff Gautreaux's failure to adequately train and/or supervise defendant Roberts constituted deliberate indifference as to Ms. Collier's constitutional rights.[23]

To support a claim based upon a failure to train or supervise, a plaintiff must show that: (1) the supervisor either failed to train or supervise a subordinate official; (2) there is a causal link between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise constitutes deliberate indifference.[24] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions."[25] Generally, deliberate indifference requires that the plaintiff show: (1) a pattern of similar violations; (2) that the inadequacy of the training was obvious; and (3) that the inadequacy of the training was obviously likely to result in a constitutional violation.[26]

---

[22] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*).
[23] Rec. Doc. No. 1, p. 9, ¶24. The Court notes this language is essentially repeated in ¶¶ 33 & 34.
[24] *Smith v. Brenoesttsy*, 158 F.3d 908, 911–12 (5th Cir.1998).
[25] *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[26] *Burge*, 187 F.3d at 371 (citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)).

While discussing the first prong of the deliberate indifference analysis, the Supreme Court explained that,

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.[27]

Defendants contend Plaintiff has failed to state a claim because her *Complaint* does not identify an official policy or custom or any specific facts tending to show an official policy or custom. Instead, Defendants contend that the Plaintiff relies upon an isolated incident to support the conclusion that an official policy or custom exists, and furthermore, Plaintiff has failed to alleged with any specificity how a particular training program was defective. In response, Plaintiff relies on the conclusory allegations in her *Complaint*, stating that "it stands to reason that deputy Roberts was not adequately trained and/or supervised, and that this failure to train or supervise caused Ms. Collier's injuries. This logical progression is not a mere label or a conclusory statement – it is a plausible theory of recovery."[28] Considering the wealth of jurisprudence to the contrary,[29] the Court disagrees.

---

[27] *Connick v. Thompson*, —— U.S. ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citations and quotations omitted).
[28] Rec. Doc. No. 9, p. 8.
[29] *See e.g., Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013)(Fifth Circuit affirmed dismissal of municipal liability claims holding that simply adding the words "policies, practices, and/or customs" to plaintiff's perceived wrongs was insufficient to survive dismissal); *Prince v. Curry*, 423 F. App'x 447, 2011 WL 1659493 (5th Cir. 2011)(Fifth Circuit upheld dismissal where plaintiff provided no specific factual allegations to support the existence of an illegal policy or custom in the county); *Blank v. Eavenson*, 530 F. App'x 364 (5th Cir. 2013)("Nowhere in his complaint, nor in his response/sur-reply to the motions to dismiss, did Blank meaningfully develop these general allegations" that municipality acted with deliberate

After reviewing the *Complaint*, the Court finds that Plaintiff has failed to adduce sufficient factual matter to make her claim plausible on its face. Rather, she has relied on conclusory allegations not entitled to the presumption of truth and insufficient to state a claim for relief.[30] To support her claim, Plaintiff provides only one isolated incident to contend that an official policy exists. This incident alone is insufficient to support a claim for municipal liability.[31] Plaintiff also fails to sufficiently plead a claim for failure to train/supervise. Again, she relies on only this isolated incident and does not allege that there is a pattern of similar constitutional violations. Therefore, Plaintiff has failed to state a municipal liability claim upon which relief may be granted, and Sheriff Gautreaux's motion to dismiss Plaintiff's Section 1983 claims against him in his official capacity is GRANTED.

### D. Individual Capacity Claims against Deputy Roberts

Curiously, while Defendants' motion appears to seek dismissal of all federal claims against them in suggesting the Court not exercise supplemental jurisdiction over the state law claims, Defendants fail to acknowledge that Plaintiff has asserted individual capacity claims against Deputy Roberts. Moreover, Defendants do not address these claims whatsoever in their memoranda. Because the individual capacity claims against Deputy Roberts survive this motion, the Court is not dismissing all

---

indifference and failed to create and enforce a policy to protect his constitutional rights. "Conclusory allegations will not suffice to prevent a motion to dismiss, and neither will unwarranted deductions of fact." (citation omitted)); *Badie v. City of New Orleans*, No. 11-2991, 2013 WL 5175648 (E.D. La. Sep. 12, 2013)(court dismissed *Monell* claims on finding that plaintiff's allegations were "too generic and conclusory to be entitled to presumption of truthfulness."); *Hills v. Stevens*, No. 12-080, 2012 WL 3779138 (M.D. La. Aug. 31, 2012)(court dismissed municipal liability claims where plaintiff failed to identify a policy or custom that allegedly caused injury as "[o]ne instance or incident is not sufficient to establish a pattern, practice, policy or custom...").

[30] See *Iqbal*, 556 U.S. at 678-79.
[31] See *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").

federal claims in this matter and will exercise supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367. As such, Plaintiff's claim that Sheriff Gautreaux is vicariously liable for the alleged intentional torts of Deputy Roberts in this matter remains before the Court.[32]

### E. Punitive Damages

Defendants contend that Plaintiff's claims for punitive damages under Section 1983 must also be dismissed. Section 1983 does not allow for recovery of punitive damages against a municipal entity.[33] To the extent Plaintiff seeks punitive damages against the Defendants in their official capacities, such claims must be dismissed. However, punitive damages are available from individual defendants under Section 1983.[34] Under Section 1983, punitive damages may be awarded only if the official conduct is "motivated by evil motive or intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights.[35] Plaintiff has alleged that Deputy Roberts unnecessarily seized her by the neck, forced her to the ground, handcuffed her and subsequently deployed his TASER gun on her,[36] "brutalized" her,[37] and "maliciously used excessive force upon" her.[38] Thus, Plaintiff has sufficiently alleged that Deputy Roberts conduct was "motivated by evil motive or intent" or demonstrates "reckless or callous indifference" to her constitutional rights. Accordingly, while the motion to dismiss Plaintiff's claims for punitive damages is meritorious to the extent it is asserted

---

[32] *See* La. R.S. 9:2798.1(C)(2).
[33] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).
[34] *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).
[35] *Id.*
[36] Rec. Doc. No. 1, p. 5, ¶ 18.
[37] *Id.*, ¶ 19.
[38] *Id.*, ¶ 21.

against Sheriff Gautreaux in his official capacity, it is without merit to the extent it is asserted against Deputy Roberts in his individual capacity.

### III. CONCLUSION

For all of the reasons set forth above, the Defendants' *Motion to Dismiss* is GRANTED in part and DENIED in part.[39] The official capacity claims brought against Sheriff Gautreaux are DISMISSED with prejudice. The official capacity claims brought against Deputy Roberts are DISMISSED with prejudice. The punitive damages claim against Sheriff Gautreaux in his official capacity is DISMISSED with prejudice. The motion is DENIED with respect to all individual capacity claims brought against Deputy Roberts, including the punitive damages claim as explained above. The motion is also DENIED as to the pending state law claims asserted.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 10 day of March, 2015.

_____
SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[39] In a footnote, Plaintiff contends she should be afforded an opportunity to amend her *Complaint*, "if needed." Rec. Doc. No. 9, p. 7, n. 2. Plaintiff fails to explain how she intends to cure the deficiencies noted in Defendants' motion, and the Court concludes any amendment would be futile for the reasons set forth above.