UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANGIE MURPHY COLLIER                                          CIVIL ACTION

VERSUS                                                        13-425-SDD-EWD

JOHN ROBERTS, SID J. GAUTREAUX, III,
AND XYZ INSURANCE CO.

### RULING

Before the Court is a *Motion for Summary Judgment* filed by Defendants, John Roberts ("Deputy Roberts" or "Roberts"), in his individual capacity as a Deputy for the East Baton Rouge Parish Sheriff's Office ("EBRPSO") and Sid J. Gautreaux, III ("Gautreaux"), Sheriff of the EBRPSO, to the extent he may be vicariously liable for the actions of Roberts.[1]  Plaintiff, Angie Murphy Collier ("Collier") has filed an *Opposition*[2] to which Defendants have filed a *Reply*.[3]  For the following reasons, the Court GRANTS Defendants' Motion.

I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On March 14, 2013, Deputy Roberts was dispatched to the business of Lee's Nails regarding the theft of "gel powder."  Based upon a description of the suspect and the license plate number provided by the complainant, Roberts went to Collier's home. Roberts, dressed in his EBRPSO uniform, knocked on Collier's door and explained that he was investigating a theft that had occurred at Lee's Nails.  After a brief discussion,

---

[1] Rec. Doc. 37.
[2] Rec. Doc. 39.
[3] Rec. Doc. 40.

32758                                           1

Roberts advised Collier of her Miranda rights and informed her that she was under arrest for felony theft.  While carrying out the arrest, Roberts grabbed Collier's arms and eventually deployed his Taser X26 twice on Collier.  Collier was ultimately booked into East Baton Rouge Parish Prison for violation of La. R.S. 14:67.10 titled felony theft, La. R.S. 14:108 titled resisting an officer, and La. R.S. 14:34.2 titled battery on a police officer.

In response to her detention and arrest, Collier filed this federal lawsuit on July 1, 2013, in which she asserted various federal and state law claims against Deputy Roberts and Sheriff Gautreaux in their official and individual capacities.  Throughout her *Complaint*, Collier repeatedly asserted that Roberts "used unreasonable, unnecessary, and excessive force while arresting and detaining [her] because defendant Roberts willfully, unreasonably, and maliciously used excessive force upon [her] by handcuffing her, seizing her by the neck, physically forcing her to the ground, and unnecessarily deploying his TASER gun while [she] was handcuffed and on the ground."[4]  As a result of Roberts' use of force, Collier claimed to have suffered "significant and substantial" physical injuries, excessive pain and discomfort, and severe mental anguish.[5]

Roberts denies Collier's claims and relies upon his incident report,[6] which tells a much different story.  In his narrative, Roberts claimed that once he informed Collier that

---

[4] Rec. Doc. 1, p. 6, ¶21. *See also*, Rec. Doc. 1, p. 1, Introduction ("On March 14, 2013, East Baton Rouge Sheriff's Office deputy John Roberts arrived at the residence of Angie Murphy Collier and inflicted unnecessary and unreasonable force upon Ms. Collier by seizing her by the neck, physically forcing her to the ground, handcuffing her, and, subsequently, deploying his TASER gun at least two times); p. 4, ¶11 ("Suddenly and without provocation, …Defendant Roberts then handcuffed her, physically seized Ms. Collier by the neck, and forced her to the ground."); p. 5, ¶18 ("Ms. Collier suffered severe personal injury when defendant Roberts unreasonably and unnecessarily seized her by the neck, forced her to the ground, handcuffed her, and, subsequently, deployed his TASER gun.").
[5] Rec. Doc. 1, p. 6, ¶22.  Collier claims to have "suffered lacerations and contusions to her wrists, hands, stomach, shoulders, and chest.  Ms. Collier also suffered excessive pain and discomfort, severe mental anguish, humiliation, embarrassment, and anxiety."
[6] Rec. Doc. 37-3.  Officer Roberts submitted an *Affidavit* attesting to the fact that the content of the East Baton Rouge Sheriff's Office incident report detailing the events of March 14, 2013, were true, accurate, and based on his personal knowledge.

she was under arrest for theft, she resisted by kicking and swinging her arms. Roberts admitted using his Taser on Collier only after being unsuccessful in restraining her with his hands. According to Roberts, he deployed one tase to Collier's chest and stomach areas and she was given a five second stun. Collier then fell to the ground. Roberts instructed Collier to roll onto her stomach and put her hands behind her back so she could be handcuffed. Collier refused and continued to kick Roberts while she was on the ground. At that point, Roberts administered another five second stun. Collier then became compliant and Roberts was able to handcuff her.

This case was stayed on October 15, 2013 pending the resolution of the underlying criminal case.[7] On December 8, 2014, Collier plead not guilty to the amended bill of information in which she was charged with resisting an officer, battery of a police officer, theft of goods, and simple assault.[8] Thereafter, Judge Bonnie Jackson of the 19th Judicial District Court conducted Collier's criminal trial.[9] After considering evidence, including witness testimony, Judge Jackson found Collier guilty on the counts of resisting an officer, and theft of goods; however, she found Collier not guilty on the remaining charges.[10] On December 22, 2014, this Court entered an order lifting the stay.[11]

In light of Collier's conviction, Defendants now move for summary judgment on Collier's remaining individual capacity 42 U.S.C. § 1983 claim for excessive force against Roberts and Collier's state law claims of excessive force, battery, assault, and intentional infliction of emotional distress against Roberts and against Sheriff Gautreaux under the

---

[7] Rec. Doc. 22.
[8] Rec. Doc. 37-4.
[9] Rec. Doc. 37-4.
[10] Rec. Doc. 37-5; Rec. Doc. 39-1.
[11] Rec. Doc. 37.

theory of *respondeat superior*.[12]  Defendants contend that Collier's claims must be dismissed because they are barred by *Heck v. Humphrey*.[13]  In response, Collier argues that *Heck* has no bearing on her claims arising out of Roberts' use of excessive force against her *after* she complied with the arrest, and that her case is more akin to the Fifth Circuit decision, *Bush v. Strain*.[14]  In support of her position, Collier relies upon an *Affidavit* she signed and dated, September 23, 2015.[15]

## II.     MOTION FOR SUMMARY JUDGMENT

### A.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]  "An issue is material if its resolution could affect the outcome of the action."[17]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[18]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's

---

[12] On March 11, 2015, the Court entered a *Ruling* granting in part and denying in part Defendants' *Motion to Dismiss*.  (Rec. Doc. 28).  The Court dismissed all of the 42 U.S.C. § 1983 official capacity claims against Roberts and Gautreaux.  The Court denied Defendants' *Motion* as to the individual capacity and state law claims, including the punitive damages claim, brought against Roberts, and the vicarious liability claims asserted against Gautreuax.  However, because Collier failed to address Defendants' argument that her federal and state unlawful or false arrest claims are barred by *Heck*, it is reasonable for the Court to conclude that Collier has abandoned these claims at the summary judgment stage.  See, *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010)("The fact that [plaintiff] raised this argument in its complaint will not save it from waiver if it failed to present this argument in its summary judgment motions.")(citation omitted)).
[13] *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
[14] *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008).
[15] Rec. Doc. 39-1.
[16] Fed. R. Civ. P. 56(a).
[17] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[18] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).


case.'"[19] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[20] However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[21]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[22] The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[23] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[24] "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[25]

---

[19] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).

[20] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

[21] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[22] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[23] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[24] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[25] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

**B.  ANALYSIS**

    1.  <u>42 U.S.C. § 1983 Excessive Force Claim</u>

The principal issue before the Court is whether Collier's pending lawsuit could collaterally attack the validity of her state court conviction.  Pursuant to *Heck v. Humphrey*,

> a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[26]

Whether a Section 1983 excessive force claim is barred by *Heck* requires an "analytical and fact-intensive" determination that requires the courts "to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction."[27] A Section 1983 excessive force claim would not be necessarily be barred by *Heck* "if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."[28]  For instance, "a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance."[29]

    In her *Opposition*, Collier does not argue that her conviction has been reversed or invalidated.  Rather, she asserts that the factual basis for her resisting arrest conviction

---

[26] *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006)(quoting *Heck*, 512 U.S. at 486-87).
[27] *Bush*, 513 F.3d at 497.
[28] *Id.* at 498.
[29] *Id.*

is conceptually distinct from her excessive force claim.  Collier contends that her case is "strikingly similar"[30] to the Fifth Circuit decision, *Bush v. Strain*.[31]  The Court disagrees.

In *Bush*, the plaintiff brought 42 U.S.C. § 1983 claims for excessive force, illegal arrest, and conspiracy against the defendant law enforcement officers arising out of her arrest for simple battery and resisting arrest.   Initially, the plaintiff claimed that she never resisted arrest; however, she subsequently testified in her deposition that she had pulled away from the officer when he attempted to grab her.[32]  She further testified that once the officer grabbed her hand, she ceased resisting, and was handcuffed.  At that point, she claimed the officer "placed his hand behind her neck and head and forced her face into the rear window of a nearby vehicle, injuring her jaw and breaking two of her teeth."[33] The plaintiff presented two witnesses who corroborated her version of the incident.[34] Following plaintiff's state court criminal conviction for resisting arrest, the defendants moved for summary judgment on the grounds that *Heck* barred plaintiff's claims.  The district court agreed and dismissed the plaintiff's claims.

On appeal, the Fifth Circuit reversed the district court stating that "there [was] conflicting evidence about whether Bush was injured before or after her resistance ceased," hence, "the crux of the dispute [was] whether the factual basis for Bush's excessive force claim [was] inherently at odds with the facts actually or necessarily adjudicated adversely to Bush in the criminal proceeding."[35]  In its reasoning, the Fifth Circuit considered the criminal court's narrow findings of fact to be critical, emphasizing

---

[30] Rec. Doc. 39, p. 8.
[31] *Bush*, 513 F.3d 492 (5th Cir. 2008).
[32] *Id.* at 496.
[33] *Id.*
[34] *Id.*
[35] *Id.* at 498.

that the criminal court's conviction was based solely upon Bush's behavior before she was handcuffed, and that "[t]he court made no findings regarding how long Bush's resistance lasted or at what point Bush was injured."[36] Recognizing that the duration of resistance and cause of Bush's injuries might be irrelevant to sustain her resisting arrest conviction, they were "material, disputed facts pertinent to [Bush's] excessive force claim."[37] The *Bush* court ultimately concluded that the factual basis giving rise to the plaintiffs' conviction for resisting arrest—when she was unrestrained and resistant--was "temporally and conceptually distinct" from those giving rise to her excessive force claim—when she was handcuffed and complacent--such that they could be separated into two distinct stages. Accordingly, the *Bush* court held that plaintiff's excessive force claim arising out of her post restraint excessive force claim was not barred by *Heck*.

Although Collier contends that the *Bush* decision defeats Defendants' *Heck* argument, the Court finds otherwise. Like the plaintiff in *Bush*, Collier repeatedly alleged in her *Complaint* that Deputy Roberts' use of excessive force during her arrest and detention was "unreasonable and unnecessary."[38] However, unlike the plaintiff in *Bush*, who specifically testified that she initially resisted arrest, Collier's *Affidavit* is completely devoid of such an admission.[39] Instead, Collier contends for the first time in this proceeding, that after receiving her first tase, she "complied" with her arrest and did not fight with Deputy Roberts.[40] She further asserts that, in spite of her compliance, Roberts

---

[36] *Id.* at 499.
[37] *Id.*
[38] Rec. Doc. 1, p. 1, Introduction; p. 5, ¶18; p. 6, ¶ 21; p. 8, ¶32; and p. 10, ¶42.
[39] In her *Affidavit*, Collier attests that "[w]hile carrying out the arrest, Deputy Roberts deployed his taser gun to my chest area. As a result of the tase, I fell to the ground. At that point, I complied with the arrest. I did not fight with Deputy Roberts after receiving the first tase. Although I began to comply, Deputy Roberts administered another five second tase upon me while I was still on the ground." Rec. Doc. 39-1, p. 1.
[40] Rec. Doc. 39-1, p. 1.

"administered another five second tase upon [her] while [she] was still on the ground."[41] The Court notes that the content of Collier's *Affidavit* is problematic, because it appears to contradict the judicial admissions within her *Complaint*, wherein she repeatedly accused Roberts of using excessive force throughout the entire arrest, not solely after the second tase.[42] At no point did Collier allege that her arrest occurred in divisible stages. Similar contradictions appear to exist regarding the cause of Collier's alleged injuries.[43] These inconsistencies notwithstanding, the Court finds that Collier's *Affidavit* cannot overcome the criminal judge's *Ruling* and findings of fact which clearly defeat any argument that alleged excessive force occurred both pre-restraint and post-restraint.

At the close of Collier's criminal trial, Judge Jackson issued a *Ruling* in which she specifically discounted Collier's version of events and found Officer Roberts' version of events, including his use of the Taser, to be credible. Judge Jackson specifically found that Collier's resistance began once Deputy Roberts told her he was going to place her under arrest, at which time she tried to retreat back into her home to avoid being handcuffed.[44] At that point, Deputy Roberts grabbed Collier's arm as she "began – her attempts to get away from him."[45] According to Judge Jackson, the evidence clearly showed that Collier was resisting by "kicking and flailing and all of the things that she was

---

[41] Rec. Doc. 39-1, p. 1.
[42] The Fifth Circuit has explained that a party cannot rebut a judicial admission made in its pleadings with new evidence or testimony. *Giddens v. Community Educ. Centers, Inc.*, 540 Fed.Appx. 381, 391 (5th Cir. 2013). *See also*, *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)("Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them.").
[43] In her *Complaint*, Collier alleged that she sustained personal injuries due to Deputy Roberts' use of excessive force throughout the entire encounter, not just after she was tased a second time. *See*, Rec. Doc. 1, p. 5, ¶ 18. "Ms. Collier suffered severe personal injury when defendant Roberts unreasonably and unnecessarily seized her by the neck, forced her to the ground, handcuffed her, and, subsequently, deployed his TASER gun."
[44] Rec. Doc. 37-5, pp. 7-8.
[45] Rec. Doc. 37-5, p. 7.

doing."[46] The Judge also considered Collier's acts of resistance when Roberts deployed his Taser. Judge Jackson stated that when Roberts initially deployed his Taser, "[h]e testified that [Collier] wasn't just standing. She was fighting and kicking and punching at him."[47] Judge Jackson expressly noted that Roberts did not deny using his Taser twice on Collier, and that, based upon his training, he did not believe Collier was administered the full jolt on either occasion.[48] Ultimately, the Judge found that Collier's version of events, specifically that she was tased after being handcuffed, could not be corroborated due to a lack of evidence.[49]

The Court finds that Judge Jackson's *Ruling* considered the factual circumstances giving rise to Collier's charge of resisting arrest as one fluid event beginning with Collier's attempt to resist arrest by retreating into her home through the times she was tased, and ultimately handcuffed. Based on the foregoing, the Court finds that Collier's 42 U.S.C. § 1983 excessive force claim is not "temporally and conceptually" inseparable from her resisting arrest conviction. Hence, Collier's excessive force claim against Roberts is barred by *Heck*.

---

[46] Rec. Doc. 37-5, p. 8.
[47] Rec. Doc. 37-5, p. 9.
[48] Rec. Doc. 37-5, pp. 8-9.
[49] Rec. Doc. 37-5, pp. 7-8. (Judge Jackson explained that Collier's witnesses "did not say that they saw her tased while she was handcuffed. They saw the prongs in her while she was handcuffed, but they never once said that we saw him deploy the taser while she was handcuffed. They didn't. And so, their testimony doesn't add anything to what happened from the time they saw her talking to the office to the time that she was on the ground handcuffed.")

2. State Court Claims: Excessive Force, Battery, Assault, and IIED[50]

In her *Opposition*, Collier argues that her state law claims of excessive force, assault and battery and intentional infliction of emotional distress (IIED) are based on Deputy Roberts' second tasing.[51] "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force."[52] As this Court has previously explained, "[i]n order to recover for an alleged battery, a plaintiff must prove, by a preponderance of the evidence, that his damages were the result of an unprovoked attack by the defendant."[53] Based on the Court's finding that Collier's excessive force claims are barred by *Heck*, Collier cannot satisfy her burden of showing that Deputy Roberts acted without provocation. Under Louisiana law, an officer may use reasonable force to overcome resistance by an individual during a lawful arrest;[54] therefore, Collier's claim that there was an unprovoked attack by Deputy Roberts would be necessarily inconsistent with and call into question her conviction for resisting arrest.

For similar reasons, Collier's intentional infliction of emotional distress claim must fail. "The elements of an IIED claim under Louisiana law are: (1) the conduct of the

---

[50] Even though the Court dismisses Collier's Fourth Amendment excessive force claim in this *Ruling*, the Court exercises its discretion to retain jurisdiction over the remaining state law claims as they do not present novel issues of state law, they derive from a common nucleus of operative fact as her federal claim, and Collier has raised no other compelling reason for the Court to decline supplemental jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed. 218 (1966); 28 U.S.C. § 1367.
[51] Rec. Doc. 39, p. 9
[52] *Wagster v. Gautreaux*, 2013 WL 6194516, *15 (M.D.La. Nov. 26, 2013)(quoting *Elphage v. Gautreaux*, 969 F.Supp.2d 493, 515 (M.D.La. 2013)).
[53] *Foster v. City of Addis*, 2014 WL 5778922, *4 (M.D.La. Nov. 3, 2014)(citing *Baugh v. Redmond*, 565 So.2d 953 (La.App.2d Cir. 1990); *Minkler v. Chumley*, 32-558 (La.App. 2d Cir. 12/8/99), 747 So.2d 720; *Lowery v. Savana*, 33-384 (La.App. 2d Cir. 5/10/00), 759 So.2d 1020)).
[54] La. Code Crim. P. art. 220 states: "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." Collier has not challenged the lawfulness of her arrest.

defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress and knew that severe emotional distress would be substantially certain to result from the conduct."[55] Considering this Court's finding that Collier's excessive force claim is barred by *Heck*, Collier's claim that Roberts' conduct was "extreme and outrageous" would also conflict with and call into doubt her conviction for resisting arrest.

Therefore, in accordance with *Heck*, the Court finds that Collier's criminal conviction precludes her state law claims of excessive force, assault and battery, and intentional infliction of emotional distress in the instant matter.

### III. CONCLUSION

Wherefore, the Court GRANTS Defendants' *Motion for Summary Judgment*.[56] Plaintiff Angie Murphy Collier's individual capacity 42 U.S.C. § 1983 claims for excessive force and unlawful arrest and state law claims of excessive force, battery, assault, false arrest, and intentional infliction of emotional distress against Deputy John Roberts and Sheriff Sid. J. Gautreaux, III are hereby dismissed with prejudice.

*Judgment* shall be entered accordingly.

Signed in Baton Rouge, Louisiana on June 17, 2016.

*[signature]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[55] *Joseph St. Romain, Jr. v. Governor's Office of Homeland Security and Emergency Preparedness*, 2016 WL 3199504, *4 (M.D.La. June 8, 2016)(citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)).
[56] Rec. Doc. 37.